IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILBERT R. BOGGS,

       Plaintiff,

v.               CIVIL ACTION NO. 2:08-cv-00100

MICHAEL J. ASTRUE,

       Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court are the parties motions for judgment on the pleadings [Docket 10, 11]. This action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, who has submitted her proposed findings of fact and recommendation ("PF&R" [Docket 13]) pursuant to 28 U.S.C. § 636(b)(1)(B) (2006). The Magistrate Judge's PF&R was filed on February 26, 2009. The defendant, the Commissioner of Social Security ("Commissioner"), and the plaintiff, Wilbert R. Boggs, both filed objections to the PF&R on March 13, 2009.

**I. Procedural History**

The plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration on March 21, 2005, due to an inability to read and write well, and back pain, which allegedly kept him from being able to work as of January 1, 2002. His application was denied initially and again upon reconsideration. On April 28, 2006, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 20, 2007, after a hearing on the plaintiff's claim, the ALJ issued a decision finding that the plaintiff was not entitled to benefits.

Thereafter, the Appeals Council denied the plaintiff's request for review and the ALJ decision became the final decision of the Commissioner. On February 12, 2008, the plaintiff brought the instant action seeking judicial review of the ALJ decision pursuant to 42 U.S.C. § 405(g). Both parties filed motions for judgment on the pleadings.

Magistrate Judge Stanley proposed that I "reverse the Commissioner and find that [the plaintiff] meets the [definition required by] Listing 12.05C." (PF&R 26.) Accordingly, Magistrate Judge Stanley recommended that I reverse the final decision of the Commissioner, remand the case for determination of the date of onset of disability and the computation of past due benefits, and dismiss the matter from the court's docket. (*Id.*)

The Commissioner's objections [Docket 15] to the PF&R focused primarily on the standard of review and Magistrate Judge Stanley's application of that standard. Specifically, the Commissioner argued that Magistrate Judge Stanley "disregarded the well-reasoned findings of the ALJ, re-weighed the medical evidence, and advocated on behalf of [the plaintiff]" rather than simply determine whether the ALJ's decision was supported by substantial evidence. (Def.'s Objections 2.) In addition, the Commissioner argues that if I disagree and conclude that the Commissioner's decision was not supported by substantial evidence, then the proper recourse is remand, rather than reversal. (*Id.* 10.)

The plaintiff also objects to the Magistrate Judge's decision to remand the case for the determination of the date of the onset of disability, rather than just to compute past due benefits based on an onset date of January 1, 2005. (Pl.'s Objections 1.) If, however, I decide to follow Magistrate Judge Stanley's PF&R, the plaintiff requests that I "direct that this matter not be

remanded to the same [ALJ] who denied [the plaintiff's] claim originally" because the ALJ allegedly showed a willingness to misstate medical evidence. (*Id.* at 3.)

## II. Standard of Review

The district court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). The Social Security Act states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The sole issue before this court, therefore, is whether the findings of the Commissioner denying the claim are supported by substantial evidence. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "Substantial evidence" is defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972). Furthermore, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Reviewing courts, however, should not resolve any conflicts in the evidence, but should weigh conflicting evidence only insofar as it is necessary to determine that the evidence in support of the Commissioner's decision is substantial in relation to the evidence as a whole.

*Seacrist v. Weinbrenner*, 538 F.2d 1054, 1057 (4th Cir. 1976); *Thomas v. Celebrezze*, 331 F.2d 541 (4th Cir. 1964).

## III. Discussion

The plaintiff has the burden of proving a disability—"[the] inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In this case, the plaintiff alleges that he is disabled due to his inability to read and write well combined with his low back pain, which have kept him from working since January 1, 2002.

### A. Background

The plaintiff, who was fifty-three years old at the time of the administrative hearing, has an eighth grade education that may have included special education classes.[1] Before dropping out of school in the ninth grade, the plaintiff repeated the first and seventh grades. Furthermore, the plaintiff had twenty-five or more absences from school in five of his six school years for which records are available, including the standardized testing days in fourth and seventh grades. The plaintiff missed many of these days because he was working on his family farm or another farm in the area. After working on a farm, in a steel foundry, and in a door and window factory, the plaintiff worked as a union general laborer in the construction industry for twenty-two years. The plaintiff stated at the administrative hearing that he worked as a molder, which is defined as a skilled occupation in the steel industry. Furthermore, the plaintiff obtained his driver's license after taking

---

[1] The school records make no indication of special education classes, but the plaintiff testified that he was in special education classes while enrolled in school.

a written test approximately three times. The plaintiff testified that he can read and write a little bit and communicate in writing and reading when "small words" are used.

Lisa C. Tate, a licensed psychologist, evaluated the plaintiff on April 24, 2005. Ms. Tate found that the plaintiff was, among other things, (1) alert throughout the evaluation, (2) oriented, (3) in a normal mood, (4) engaging in a logical and coherent thought process with (5) fair insight and normal judgment. Ms. Tate further found that the plaintiff's immediate memory and remote memory were within normal limits, but that his recent memory was moderately deficient. Ms. Tate administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) and the plaintiff scored a 68 verbal IQ score, 64 performance IQ score, and a 64 full scale IQ. Ms. Tate deferred making a final diagnostic assessment due to invalid results because a satisfactory rapport was not established between Ms. Tate and the plaintiff. Nevertheless, Ms. Tate stated that the plaintiff's social functioning was within normal limits based on his interaction with staff and that he would be competent to manage any benefits he may receive. Ms. Tate noted, however, that the plaintiff had mildly deficient concentration, persistence, and pace.

On May 25, 2005, Dr. Clark H. Hoback evaluated the plaintiff and stated that the plaintiff's "adaptive function does not suggest mental retardation" and that the plaintiff "has no medically determinable psychiatric impairment." Dr. Hoback acknowledged that the plaintiff alleges he is unable to read and write, but Dr. Hoback found the plaintiff to be "not entirely credible."

On July 19, 2005, Timothy S. Saar, Ph.D., a licensed psychologist, and Janice Blake, M.A., a supervised psychologist, evaluated the plaintiff at the request of the plaintiff's representative. Saar and Blake reported that the plaintiff denied having any mental health issues. As Magistrate Judge Stanley noted:

> They found [the plaintiff] was dressed appropriately; speech was relevant and coherent; psychomotor activity was within normal limits; anxiety level was appropriate to the situation, "constricted range of affect with mood observed (first hostile then euthymic)" stream of thought "logical, sequential, and coherent"; and no evidence of excessive obsessions, compulsions, or phobias, hallucinations or delusions, homicidal/suicidal ideations; immediate memory intact but delayed memory was impaired.

(PF&R 9.) Saar and Blake also found that it was not easy to establish a rapport with the plaintiff, that he was uncooperative and hostile at times when questioned about job duties, and that he may have been trying to cover up his slow learning. However, Saar and Blake stated that they were able to establish a rapport. Finally, they reported that the plaintiff admitted that he did seasonal work, which was "very menial." (*Id.*)

Saar and Blake also administered the WAIS-III, upon which the plaintiff scored a 67 verbal IQ score, a 60 performance IQ score, and a 62 full scale IQ. Saar and Blake noted that these scores were consistent with the previous test results that were considered invalid. Interestingly, Saar and Blake stated that "[i]t took fairly intense questioning to get him to report that he had been a seasonal worker and basically his duties were to get the tools or products that the carpenters needed to perform their jobs." Saar and Blake stated that the plaintiff did not work as a molder, as he had claimed previously, but instead performed menial tasks at work.

On February 16, 2006, Frank Roman, a licensed clinical psychologist, completed a Mental Residual Functional Capacity Assessment of the plaintiff on behalf of a state agency. Mr. Roman stated that the plaintiff "was not significantly limited in most areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation." (PF&R 11.) Mr. Roman found that, after reviewing the medical evidence, the plaintiff was independent and able to carry out the typical activities of daily living without assistance, as well as follow routine work

activities after initial supervision. Mr. Roman also administered a Psychiatric Review Technique Form and found that the plaintiff was only partially credible. Furthermore, Mr. Roman found that the plaintiff "functions well into the kBIF range." (Tr. at 218.) Magistrate Judge Stanley noted that the "k" may be a typo because the term "BIF" means borderline intellectual functioning. (PF&R 12.)

In addition to the mental examinations and alleged mental deficiencies, the plaintiff also maintains that he has low back pain, which caused him to leave his work. In May 2005 and February 2006, state agency medical sources completed Physical Residual Functional Capacity Assessment exams on the plaintiff. In May 2005, the evaluator held that the plaintiff could perform heavy work and did not deem the back problem to be severe. In February 2006, the evaluator held that the plaintiff could perform medium work without postural limitations. The evaluator also found that the plaintiff was only partially credible.

**B. Analysis**

In making a determination on an applicant's DIB claims, an ALJ must follow the five-step evaluation of disability set forth in the Commissioner's regulations. 20 C.F.R. § 404.1520. The regulations require the ALJ to consider whether a claimant 1) is working, 2) has a severe impairment, 3) has an impairment that meets or equals the requirements of a listed impairment, 4) can return to his past work, and 5) if not, whether he can perform other work. *Id.* If the ALJ finds that a claimant does not satisfy any step of the process, review does not proceed to the next step. *Id.* In this case, the ALJ found, during the third inquiry, whether he has an impairment that meets or equals the requirements of a listed impairment, that the plaintiff's impairments of low back syndrome and borderline intellectual functioning do not meet or equal the requirements of any listed

impairment. The ALJ further held that the plaintiff has a residual functional capacity for medium work, reduced by nonexertional limitations and that the plaintiff could, therefore, perform jobs such as laundry worker and janitor, which exist in significant numbers in the national and regional economies.

The plaintiff argued that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find that the plaintiff suffers from a 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 impairment. In other words, the plaintiff believes the ALJ erred in failing to find that he meets or equals the standard for mental retardation found in Listing 12.05C—which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Subpt. P, App. 1, § 12.05. In support of his argument, the plaintiff asserted that: (1) the ALJ did not make a fair evaluation of the medical evidence and misquoted it several times; (2) the ALJ did not fairly evaluate the plaintiff's school records which show he suffered from deficits in adaptive functioning that first manifested before age 22; (3) the ALJ erred in relying on his work experience to conclude that the plaintiff did not suffer deficits of adaptive functioning which manifested before age 22.

As to the plaintiff's first assertion, Magistrate Judge Stanley noted that the ALJ did misquote and misconstrue the medial records. Specifically, the ALJ stated that he was relying on Ms. Tate's diagnosis of the plaintiff as Borderline Intellectual Functioning, but the record shows that Ms. Tate did not diagnose the plaintiff and instead deferred diagnosis. The plaintiff further asserted two other misstatements by the ALJ. Magistrate Judge Stanley found "that the ALJ did misstate the medical evidence . . . and that these misstatements undermine the credibility of his decision." (PF&R 19.)

I agree with Magistrate Judge Stanley that the ALJ improperly assessed the medical evidence. I cannot agree, however, that the various medical evaluations make the medical evidence and IQ scores clear. I cannot undertake a *de novo* review of the Commissioner's decision and re-weigh the evidence of record. *See Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972); *Blalock*, 483 F.2d at 775. This case has a lengthy record that includes a number of evaluations by experts, many of which contradict each other. Such evidence must be weighed by the ALJ and not by the court. Furthermore, the ALJ must make important credibility assessments about the relevant parties that are much more easily made upon hearing the testimony in person.

For the reasons discussed above, I **FIND** that reversal and remand are appropriate in this case because the ALJ's final decision was based on an incorrect statement of the evidence. Accordingly, the Commissioner's objection is overruled. I also overrule the plaintiff's first objection that the court determine the date of the onset of disability because, as I noted previously, I will not weigh the facts on review, but rather leave that up to the ALJ. The plaintiff further requests that if remand is necessary, I order the case remanded to a different ALJ due to his misstatements of the medical evidence. I decline to make such an order because I cannot find any evidence that the ALJ did anything to warrant it. Accordingly, the plaintiff's objections are overruled.

## IV. Conclusion

I **FIND** that due to the misapplication of evidence, the ALJ's decision, and therefore the Commissioner's final decision, is not supported by substantial evidence. I further **FIND** that I need not reach the plaintiff's other arguments because the error with regards to the medical evidence is enough to find a lack of substantial evidence. Quite simply, where the ALJ rests his decision in specific medical evidence that is incorrect, such a decision cannot be supported by substantial

evidence.  *See, e.g.*, *Curry v. Barnhart*, 247 F. Supp. 2d 632, 635 (E.D. Pa. 2003) (holding that where the ALJ misinterpreted a treating physician's medical opinion, the ALJ's decision was not supported by substantial evidence).  The objections of both the plaintiff and the Commissioner are overruled and I **ADOPT** the Magistrate Judge's opinion insofar as it is consistent with my holding that the evidence must be reevaluated upon remand.  Accordingly, I **REVERSE** the final decision of the Commissioner and **REMAND** this case for a new determination as to whether the plaintiff meets the standard found in Listing 12.05C and any other determinations required thereafter.  Furthermore, in accordance with the accompanying Judgment Order, I **ORDER** this matter **DISMISSED** from the court's docket.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

                ENTER:     March 24, 2009

                Joseph R. Goodwin, Chief Judge